IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVEN CASAS, individually and on behalf of all other similarly situated consumers, ) ) ) | Case No.: 4:18-cv-4444 |
| Plaintiff, ) ) | |
| vs. ) ) ) ) | **MOTION TO ENFORCE** |
| EQUIFAX INFORMATION SERVICES LLC, VERIZON WIRELESS, JEFFERSON CAPITAL SYSTEMS LLC, ) ) ) ) | |
| Defendants. ) | |

**COME NOW**, Plaintiff, Steven Casas ("Plaintiff"), by and through their undersigned counsel, respectfully request the Court enforce an arbitration subpoena against Defendant Equifax Information Services LLC ("Equifax") in this case pursuant to the Federal Arbitration Act ("FAA").

**FACTS OF THE CASE**

Plaintiff brought this suit as a class action complaint against the defendants for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). *See* Complaint [ECF 1]. Specifically, Plaintiff alleges that Defendant Verizon Wireless, in an attempt to collect a personal debt, chose to report that Plaintiff was delinquent three times for the same alleged debt on Plaintiff's credit report. [ECF 1], ¶¶ 11-13. Meanwhile, Defendant Jefferson Capital Systems LLC was reporting the same debt on a fourth trade line. [ECF 1], ¶ 14. Plaintiff disputed the errant tradelines with Equifax, who failed to conduct a reasonable investigation and verified all the

1

tradelines as accurate, and failed to maintain reasonable procedures to prevent duplicate accounts from appearing on consumer reports. [ECF 1], ¶¶ 16 and 18.

After a motion to compel, the claims between Plaintiff and Verizon Wireless were stayed and compelled to arbitration on September 23, 2019. [ECF 45]. The case against Equifax was stayed pending the outcome of that arbitration on November 19, 2019. [ECF 50]. In so ruling, the Court stated that a stay was appropriate, "because the factual issues to be decided by the arbitrator are closely related to and may be dispositive of Plaintiff's sole claim against Equifax for violation of the Fair Credit Reporting Act. . . . Thus Plaintiff's claims against Equifax are inseparable from his claims against Verizon and Jefferson." [ECF 50], p. 2. Equifax moved for the stay on the sole basis that the initial threshold question of whether the information was accurate could be resolved in arbitration, citing the fact that the Complaint against all the defendants was based on the same operative facts and were inherently inseparable. [ECF 36]. Equifax further stated that, if the case were not stayed, "Verizon and Jefferson Capital would doubtless be called on to produce relevant information – documents and testimony – in their possession. That would be duplicative and wasteful." [ECF 36], pp. 8-9. Plaintiff, now in arbitration with Verizon Wireless, now ask Equifax for the same relevant information – documents and testimony -- to help establish the "operative facts" of the case. The arbitrator agreed with Plaintiff and has issued a subpoena, which Equifax has stated that it will not honor. *See* Subpoena, attached hereto as Exhibit A. As such, Plaintiff now asks the Court to enforce the arbitrator's subpoena.

## **ARGUMENT**

Certain evidence from Equifax is needed for Plaintiff to prove his case in arbitration against Verizon Wireless. Even Equifax admits in its motion that "in order to maintain a private right of action against a furnisher of information pursuant to § 1681s-2(b): (1) the plaintiff must notify a

2

consumer reporting agency of inaccurate information; (2) the consumer reporting agency must notify the defendant of the dispute; (3) the defendants must fail to conduct an investigation, fail to correct any inaccuracies, and fail to notify the consumer reporting agency of the results of the investigation." [ECF 36], pp. 7-8 (*citing Conrad v. Barclays Bank Delaware*, 2017 U.S. Dist. LEXIS 220709 (S.D. Tex. July 27, 2017)). As such, Defendant concedes that the claims are "inherently inseparable," "closely related" and hinge on several communications between the consumer reporting agency and the furnisher.

Specifically, Plaintiff argued to the Arbitrator that clear testimony was needed to show that Equifax in fact forwarded three separate disputes to Verizon Wireless, and to explain its policies for how it identifies accounts as reporting in duplicate to furnishers. Further, Plaintiff needed non hearsay credit reports from Equifax that show the duplicate reporting and an explanation for how the triple accounts were reporting to lenders as evidence of damages. Because the case involves technical documents, the documents themselves need to be explained by an industry insider. The Arbitrator agreed with Plaintiff that the documents and the deposition were relevant and required in this case, even in light of the arbitration's focus on efficiency and cost-effectiveness. Equifax has refused to respond to the subpoena, and thus, Plaintiff respectfully asks that this Court enforce the subpoena against Defendant pursuant to the FAA.

In pertinent part, the FAA states:

The arbitrators . . . may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. . . . If any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition to the United States district court for the district in which such arbitrators . . . are sitting may compel the attendance of such person or persons before said arbitrator[s].

9 U.S.C. § 7.

It is undisputed that arbitrators can permit the discovery they deem necessary. *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 564 (S.D. Miss 1976) (finding that arbitrators, in their discretion, may permit and supervise the discovery they deem necessary); *see also Stanton v. Paine Webber Jackson & Curtis*, 685 F. Supp. 1241, 1242 (S.D. Fla. 1988) ("the arbitrators may order and conduct such discovery as they find necessary."). In *Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 44 (M.D. Tenn. 1994), the court noted that the arbitrator's determination that the documents were relevant should not be disturbed, stating that "given this Court's minimal contact with the issues involved in the litigation . . . and the arbitration panel's expertise in this matter, there is no reason to second guess the panel's determination as to relevance." Similarly, in this case, the Arbitrator has deemed the requested information relevant, as well as necessary. A Court should not interfere with the arbitration matter, but should endeavor to assist the arbitration process run efficiently. *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870 (8th Cir. 2000) ("[W]e believe this interest in efficiency is furthered by permitting a party to review and digest relevant documentary evidence prior to the arbitration hearing."). To further assist the arbitration process, the subpoena should be enforced.

Not only should the subpoena be enforced, it must logically be enforced prior to any hearing for two reasons. First, it permits the "party to review and digest" the relevant evidence. *Id*. Secondly, specific to this matter, some issues will be decided on the papers, and not in a hearing. Thus, all relevant evidence should be gathered prior to filing briefs. For this reason, courts have read § 7 to allow for the enforcement of subpoenas before a hearing. *See Stanton*, 685 F. Supp. At 1242-43; *In re Sec. Life Ins. Co. of Am.*, 228 F.3d at 870-71; *Meadows*, 157 F.R.D. at 45 ("The power of a panel to compel production of documents from third-parties for the purposes of a

hearing implicitly authorizes the lesser power to compel such documents for arbitration purposes prior to a hearing."); *see also American Fed'n of TV & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999). The *Stanton* court also found that the "contention that § 7 of the Arbitration Act only permits the arbitrators to compel witnesses at the hearing, and prohibits pre-hearing appearances, is unfounded." 685 F. Supp. At 1243; *see also Amgen Inc. v. Kidney Ctr.*, 879 F. Supp. 878, 880 (N.D. Ill. 1995) (enforcing arbitration subpoena for documents and testimony, finding that "courts have held . . . that implicit in the power to compel testimony and documents for purpose of a hearing is the lessor power to compel such testimony and documents for purposes prior to a hearing."). In this case, given that at least some issues will be decided on the papers, it is necessary to compel production and testimony prior to a hearing.

While some courts have limited enforcement to only document production, in this case, it should comparably extend to a deposition. Some of the courts that have not enforced a deposition have found that it would be a burden to force a non-party to appear twice, once for a deposition, and once again at the hearing. *See e.g.*, *Integrity Ins. Co. v. American Centennial Ins. Co.*, 885 F. Supp. 69, 73 (S.D.N.Y. 1995) ("The non-party may be required to appear twice – once for the deposition and again at the hearing."); *P&G Allianz Ins. Co.*, 2003 U.S. Dist. LEXIS 26025 (S.D.N.Y. Dec. 2, 2003) ("The burden on non-parties of having to appear twice in an arbitration proceeding in which they have no direct stake outweighs any diminution in the attractiveness or effectiveness of arbitration."). However, this concern is absent in this case, as the deposition transcript will be sufficient for use in determining the issue on the papers, or could be read at any further hearing. In short, there would be no burden on Equifax as it would only need to appear once.[1] Moreover, Equifax is not a party that has "no direct stake" in the outcome. To the contrary,

---

[1] It would also be more efficient for the present stayed case, as once the stay is lifted, Equifax will not have to give a deposition again.

it directly has a stake in the outcome of the arbitration proceedings, at Equifax itself argued in its motion to stay. Equifax is not a mere bystander, but is a party to the federal suit and intricately related to the underlying claim and the arbitration proceedings. *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d at 871; *Meadows*, 157 F.R.D. at 45 (non-party was "intricately related to the parties involved in the arbitration and are not mere third-parties who have been pulled into this matter arbitrarily."). For this reason, the impetus behind the logic of limiting deposition testimony is alleviated in this case, as the burden is absent and Equifax has a vested interest.

Likewise, several courts have found that the efficiency of arbitration in complex cases "will be degraded if the parties are unable to review and digest relevant evidence prior to the arbitration." *COMSAT Corp. v. NSF*, 190 F.3d 269, 276 (4th Cir. 1999). In those cases, parties may petition the court with a showing of "special need or hardship." *Id.* (*citing Burton v. Bush*, 614 F.2d 389, 390-91 (4th Cir. 1980); *Ferro Union Corp. v. SS Ionic Coast*, 43 F.R.D. 11 (S.D. Tex. 1967). Here, Plaintiff has a special need for the information to allow the arbitrator to properly decide issues on the papers, prior to or without the need for a time-consuming and expensive hearing. Otherwise, the evidence would not be available to the arbitrator at briefing. Further, Equifax cannot be harmed by the process, as it clearly contemplated that the overlap of facts when it filed the motion to stay. "This Court cannot conceive how defendants can be harmed by allowing the depositions to proceed, . . . and allowing the production of the documents requested. On the other hand, to allow all of these matters to proceed would, it seems to this Court, be an aid to the ultimate arbitration proceedings. . . . This decision does mean, however, that potentially valuable information will be available for the arbitrators to consider if they so desire." *Ferro Union Corp.*, 43 F.R.D. at 14.

## CONCLUSION

For these reasons, Plaintiff respectfully requests the Court enforce the subpoena against Defendant Equifax. The Arbitrator has clearly determined that the requested information is relevant and necessary to the determination of the underlying issue, and Equifax has a vested interest in the case. Further, Equifax cannot say that it will be burdensome, as it will be overall more efficient to take the deposition than to have a corporate representative come unprepared to a hearing, then have the same representative possibly take the same deposition later in the federal case.

Dated:  February 1, 2021.

Respectfully Submitted,

*/s/ Daniel Zemel*
Daniel Zemel, Esq.
ZEMEL LAW LLC
660 Broadway
Paterson, New Jersey 07514
T: 862-227-3106
DZ@zemellawllc.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2021 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

/s/ Daniel Zemel
Daniel Zemel, Esq.

EXHIBIT A

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| STEVE CASAS, | ) | Case No.: 01-19-0004-1115 |
| Claimant, | ) ) ) | |
| vs. | ) ) | **SUBPOENA TO TESTIFY AND PRODUCE DOCUMENTS** |
| CELLCO PARTNERSHIP | ) ) | |
| Respondent. | ) ) ) | |

FROM THE PEOPLE OF THE STATE OF TEXAS

To:    EQUIFAX INFORMATION SERVICES LLC

GREETINGS:

　　　WE COMMAND YOU that, all business and excuses being laid aside, you and each of you appear at the time, date, and place set forth below to provide documents described on Exhibit 1 and Exhibit 2 and to testify at a deposition to be taken in this action:

**Place: ZEMEL LAW**
　　　　**660 BROADWAY**
　　　　**PATERSON, NJ 07514**

**Date and Time:**

**September 11, 2020 at 11:00 a.m. EST**

Signed: _Sylvia A. Matthews_
　　　　Hon. Sylvia A. Matthews, Arbitrator

Signed on: 8.11.2020

Requested by:  Steve Casas
Daniel Zemel, Esq.
　　　Name of Representative
660 Broadway, Paterson New Jersey     07514
Address                                                          Zip Code
(862) 227-3106
　　　Telephone
Dated:  August 11, 2020

**Exhibit 1 to Equifax Subpoena**

1. Information explaining the meaning of all ACDV transmissions to and received from Cellco between 2016 and 2019, concerning Claimant.
2. Information concerning documents produced to Cellco between 2016 and 2019, concerning Claimant.
3. Information on how duplicate disputes are transmitted to furnishers of information such as Cellco.
4. Information concerning all communications to and from Cellco between 2016 and 2019 concerning Claimant.
5. Information on how duplicate trade lines impact consumer credit worthiness.
6. Information on how furnishers are to handle/prevent the reporting of duplicate information.

**Exhibit 2 to Equifax Subpoena**

1. All communications between Cellco and Equifax during 2016 and 2019 concerning Claimant.
2. All correspondence between Equifax and Mr. Casas during 2016 and 2019.
3. Monthly frozen scan credit reports from February 2018 through November 2018 concerning Claimant.