UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVEN CASAS, individually, and on behalf of all other similarly situated consumers, <br><br> Plaintiff, <br><br> vs. <br><br> EQUIFAX INFORMATION SERVICES, LLC; VERIZON WIRELESS; JEFFERSON CAPITAL SYSTEMS, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CASE NO: 4:18-CV-04444 |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE SUBPOENA**

Plaintiff asks the Court to enforce a subpoena to testify and produce documents issued in the pending arbitration between Plaintiff and Defendant Verizon Wireless, to which Equifax Information Services LLC is not a party. The subpoena demands that Equifax (1) produce various communications with Plaintiff and Verizon over a three-year time span, (2) create and produce ten "frozen scans" reflecting how Plaintiff's Equifax credit file appeared at specific points in time during that time span, and (3) produce a corporate representative to testify about various topics, including Equifax's communications with Verizon, Equifax's internal policies regarding consumer disputes, how creditors view and treat duplicate tradelines, and how furnishers like Verizon prevent the reporting of duplicate tradelines. Doc. 56 at 8-11. Plaintiff's Motion should be denied for several independent reasons.

*First*, the Arbitrator lacked authority under the Federal Arbitration Act ("FAA") to issue a discovery subpoena for documents and deposition testimony to a non-party to the Arbitration.

Although the Fifth Circuit has not addressed this issue, the majority of circuits that have addressed it—along with district courts in this Circuit—have held that the FAA does not permit the issuance of subpoenas for pre-hearing discovery to third parties.

*Second*, even if Plaintiff were right that the FAA empowers an arbitrator to subpoena a third party for pre-hearing discovery upon a showing of extraordinary circumstances or special need, Plaintiff has not made that showing here.  All of the documents and information Plaintiff seeks should either be in the possession of the parties to the Arbitration or are irrelevant to Plaintiff's claims against Verizon.  Notably, Plaintiff does *not* claim that he has tried but failed to obtain the documents and information he seeks from Verizon or his own files.

*Finally*, compiling (and creating) the requested documents and preparing a corporate representative to testify on the numerous topics noticed by Plaintiff would be unduly burdensome for Equifax, and Plaintiff should not be permitted to impose this burden on a non-party to the Arbitration without trying to obtain the information and documents through discovery in the Arbitration.

## FACTUAL BACKGROUND

Plaintiff filed this putative class action against Equifax, Verizon, and Jefferson Capital Systems, LLC on November 21, 2018.  Plaintiff asserts claims for violations of the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA") based on the reporting of his Verizon cell phone account.  Specifically, Plaintiff alleges that after he defaulted on his cell phone account, Verizon chose to report him "delinquent twice for the same alleged debt[,]" and then further "chose to punish [him] … [by] reporting a third trade line for the same debt" after he disputed the reporting of his Verizon tradelines.  Doc. 1 ¶¶ 8, 10-12.

Based on these allegations, Plaintiff claims that Verizon violated Section 1681s-2(b) of the FCRA, which requires entities that furnish information to consumer reporting agencies ("CRAs") like Equifax to take certain actions "[a]fter receiving notice … of a dispute with regard to the completeness or accuracy of any information" that the furnisher provided to a CRA. 15 U.S.C. § 1681s-2(b). Those steps include "conduct[ing] an investigation with respect to the disputed information[,]" "review[ing] all relevant information provided by the consumer reporting agency[,]" and "report[ing] the results of the investigation to the consumer reporting agency." *Id*.[1]  As to Equifax, the Complaint alleges that "Equifax transmitted [his] disputes to Verizon," but "failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to" Plaintiff's Verizon account and failed to adequately "reinvestigate Plaintiff's disputes"—all in violation of separate provisions of the FCRA that govern the conduct of CRAs as opposed to furnishers. Doc. 1 ¶¶ 16, 37, 39 (citing 15 U.S.C. §§ 1681e(b), 1681i).

On June 27, 2019, Verizon moved to compel arbitration of Plaintiff's claims against Verizon in accordance with a mandatory arbitration agreement between those two parties. Doc. 32.  Jefferson Capital, as Verizon's successor-in-interest to Plaintiff's cell phone account, joined in that motion.  Doc. 34.  On September 23, 2019, the Court granted Verizon's motion and ordered that Plaintiff, Verizon, and Jefferson Capital proceed to arbitration.  Doc. 45.

Then, on July 12, 2019, Equifax moved to stay Plaintiff's claims against it pending the outcome of the Arbitration.  Doc. 36.  Equifax argued that "the viability of Plaintiff's FCRA claims against [it] turns on whether the information that Verizon and Jefferson Capital furnished to Equifax was accurate," and that "Plaintiff and Verizon are best-positioned to resolve the

---

[1] Plaintiff also alleges that "Verizon misrepresented the character, extent, and amount of Plaintiff's alleged debt in violation of [the FDCPA]."  Doc. 1 ¶ 52.

3

accuracy of the reporting of Plaintiff's Verizon account." Doc. 36 at 7-8. The Court granted Equifax's motion on November 19, 2019, Doc. 50, and this case has been stayed since that date as Plaintiff arbitrates his claims against Verizon.[2]

On August 21, 2020, almost a year after the Court compelled arbitration between Plaintiff and Verizon, Plaintiff's counsel sent an email to counsel for Equifax attaching a document entitled "Subpoena to Testify and Produce Documents," which purported to command Equifax to appear in Patterson, New Jersey on September 11, 2020 to provide documents and deposition testimony in connection with the Arbitration. Ex. 1 at 7; Ex. 2. The document was signed by the Arbitrator presiding over the Arbitration between Plaintiff and Verizon.

On August 26, 2020, counsel for Equifax notified Plaintiff's counsel that, for starters, Equifax was not available for a deposition on September 11, 2020, and Equifax's counsel also requested that Plaintiff provide Equifax with copies of any scheduling orders and/or protective orders entered in the Arbitration so Equifax could analyze what (if any) obligations it had to provide the requested documents and testimony. Ex. 1 at 5-6. Plaintiff's counsel then provided copies of a scheduling order and protective order entered in the Arbitration. Ex. 1 at 5. Noting that the scheduling order provided that "[i]f a party determines that a deposition is necessary, that party may request leave to conduct additional discovery," Ex. 3, Equifax requested the order from the Arbitrator granting Plaintiff leave to serve a deposition subpoena on Equifax, and Plaintiff's counsel responded that there was no such order. Ex. 1 at 4. After reviewing the documents received from Plaintiff's counsel, counsel for Equifax sent an email to Plaintiff's counsel on September 3, 2020 explaining its position that the Arbitrator lacked authority to issue

---

[2] On February 6, 2020, Plaintiff and Jefferson Capital filed a stipulation of dismissal with prejudice as to Plaintiff's claims against Jefferson Capital, and the Court dismissed those claims with prejudice the next day on February 7, 2020. Docs. 51, 52.

4

a subpoena compelling pre-hearing deposition testimony from Equifax. Equifax thus requested that Plaintiff withdraw the subpoena.³ Ex. 1 at 2-3. Five months later, Plaintiff filed his Motion to Enforce. Doc. 56.

## ARGUMENT

I. **The FAA Does Not Authorize An Arbitrator To Subpoena Pre-Hearing Discovery From A Non-Party.**

    a. **Plaintiff's Motion To Enforce Should Be Denied Under The Clear Weight Of Authority.**

Section 7 of the FAA states in pertinent part that arbitrators "may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." Doc. 56 at 3, quoting 9 U.S.C. § 7. This provision contains no reference to pre-hearing document productions or deposition testimony. In fact, the majority of courts have held that the FAA does *not* grant an arbitrator authority to order non-parties to appear at depositions or produce documents in advance of the arbitration hearing itself. *See* Ex. 1 at 1.

In particular, the Second, Third, Ninth, and Eleventh Circuits have all expressly held that the FAA only authorizes an arbitrator to issue a subpoena for a witness to appear and produce documents *at the arbitration hearing itself*. *See Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1159 (11th Cir. 2019) ("[W]e agree with the Second, Third, Fourth, and Ninth Circuits and hold that the plain language of the [FAA] is unambiguous in requiring witnesses to appear before an arbitrator and bring any documents with them, thus prohibiting pre-hearing discovery from non-parties"); *CVS Health Corp. v. Vividus, LLC*, 878

---

³ Counsel for Equifax also stated that they would make themselves "available to engage in a further discussion to determine if there is a potential compromise that [Plaintiff and Equifax] could reach on a limited document production." Ex. 1 at 3. In response, Plaintiff stated that "[d]ocuments [would] not be sufficient." *Id.* at 1.

5

F.3d 703, 706 (9th Cir. 2017) ("The text of section 7 grants an arbitrator no freestanding power to order third parties to produce documents other than in the context of a hearing"); *Life Receivables Trust v. Syndicate 102 at Lloyd's of London,* 549 F.3d 210, 216-17 (2nd Cir. 2008) ("[W]e join the Third Circuit in holding that section 7 of the FAA does not authorize arbitrators to compel pre-hearing document discovery from entities not party to the arbitration proceedings"); *Hay Group, Inc. v. E.B.S. Acquisition Corp.,* 360 F.3d 404, 407 (3d Cir. 2004) ("Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time").[4]

While the Fifth Circuit has not decided this issue, district courts in the circuit have sided with the Second, Third, Fourth, Ninth, and Eleventh Circuits. *See, e.g., Chicago Bridge & Iron Co. N.V. v. TRC Acquisition, LLC*, No. CIV.A. 14-1191, 2014 WL 3796395, at *3 (E.D. La. July 29, 2014) ("This Court agrees with the Second, Third, and Fourth Circuits that Section 7 provides only for the issuance and enforcement of a subpoena duces tecum against non-parties who are compelled to testify as witnesses before the arbitrator, not for a subpoena seeking merely the production of documents by a non-party who is not summoned to testify as a witness before the arbitrator."); *Empire Fin. Grp., Inc. v. Penson Fin. Servs., Inc.*, No. CIV.A. 3:09-CV-2155D, 2010 WL 742579, at *3 (N.D. Tex. Mar. 3, 2010) ("The court adopts the reasoning of the

---

[4] The Fourth Circuit has similarly held that the FAA does not grant an arbitrator authority to order non-parties to appear at depositions "or the authority to demand that non-parties provide the litigating parties with documents during prehearing discovery," but has contemplated in dicta that a party might, under "unusual circumstances," petition a court to compel pre-hearing discovery upon a "showing of special need or hardship." *COMSAT Corp. v. National Sci. Found.,* 190 F.3d 269, 274-76 (4th Cir. 1999). Only the Eighth Circuit has split from the others, holding that arbitrators have implicit power to subpoena relevant documents for a party's review prior to the arbitration hearing. *In re Arbitration Between, Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870–71 (8th Cir. 2000).

Third and Second Circuits and holds that § 7 of the FAA does not authorize arbitrators to compel production of documents from a non-party, unless they are doing so in connection with the non-party's attendance at an arbitration hearing."). Under the clear weight of authority, therefore, Plaintiff's subpoena demanding pre-hearing discovery from Equifax is unenforceable.

### b. Plaintiff's Authorities Are Inapposite And Not Persuasive.

The cases Plaintiff relies on in his Motion are distinguishable and do not support the relief he requests.

*First*, Plaintiff has not cited a single case where a court granted a motion to enforce an arbitration subpoena seeking pre-hearing *deposition testimony* from a non-party to the arbitration. Plaintiff thus offers no authority for that extraordinary request.

*Second*, while the Eighth Circuit and a small number of district courts have read Section 7 of the FAA to allow an arbitrator to subpoena *documents* in advance of an arbitration hearing, *see, e.g.*, *Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 44 (M.D. Tenn. 1994), these decisions are inconsistent with the clear weight of authority discussed above, including decisions from courts in this Circuit. Accordingly, these decisions are not persuasive.

*Third*, the remaining authorities Plaintiff cites are inapposite. In *Stanton v. Paine Webber Jackson & Curtis*, the court denied plaintiffs' emergency motion for temporary restraining order and preliminary injunction, which sought protection from a "subpoenas duces tecum … requir[ing] [a] pre-hearing production of documents to the defendants"; the court reasoned that the plaintiffs were "asking the court to impose judicial control over the arbitration proceedings." 685 F. Supp. 1241, 1242-43 (S.D. Fla. 1988). No such circumstances are present here. Additionally, in *In re Security Life Insurance Company of America*, 228 F.3d 865, 870 (8th Cir. 2000), the court noted that "Transamerica's challenge to the district court's order compelling

attendance of its employee at a pre-hearing deposition has been mooted by its compliance with the California court's subpoena," and thus did not decide whether an arbitrator has authority to compel attendance at a deposition. Further, *American Federation of Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of Detroit, Inc.)*, 164 F.3d 1004, 1006, 1010 (6th Cir. 1999), involved enforcement of a subpoena issued under Section 301 of the Labor Management Relations Act of 1947, not the FAA, and *Ferro Union Corporation v. S. S. Ionic Coast*, 43 F.R.D. 11, 12 (S.D. Tex. 1967) involved a motion for the court to issue a subpoena under Rule 45, not an arbitral subpoena. And in *Amgen Inc. v. Kidney Ctr. of Delaware County, Ltd.*, 879 F. Supp. 878, 880 (N.D. Ill. 1995), *cause dismissed*, 101 F.3d 110 (7th Cir. 1996), the party opposing the subpoena did not "argue[] that it is not subject to a summons because it is not a party to the arbitration"; rather, the court addressed only whether an arbitrator has "authority to subpoena persons who are located outside of the district in which he sits or beyond 100 miles of the site of the arbitration."

*Finally*, none of Plaintiff's cases supports his argument that an arbitrator's authority under section 7 of the FAA is somehow greater in cases where "some issues will be decided on the papers, and not in a hearing." Doc. 56 at 4. Equifax is aware of no decision suggesting that an arbitrator can order pre-hearing deposition testimony and document productions from a third party in those circumstances—in fact, Plaintiff's position directly contradicts both the plain text of the FAA and authority in numerous federal circuits, including this one. *See supra*, at I(a). Perhaps acknowledging that he lacks legal authority for his position, Plaintiff argues that the Arbitrator's subpoena "must logically be enforced." Doc. 56 at 4. Logic, though, is no substitute for legal authority, particularly since Plaintiff offers no support for his assertion that "some [of the] issues [in the Arbitration] will be decided on the papers." *Id*. In any event, there

8

are no good reasons—"logical" or otherwise—to enforce the Arbitrator's subpoena here, as further explained below.

## II. The Information Sought From Equifax Is Not Relevant to Plaintiff's Claims Against Verizon.

Even if Plaintiff were correct that pre-hearing discovery can be subpoenaed from a non-party to an arbitration upon a "showing of 'special need or hardship,'" Doc. 56 at 6, Plaintiff fails to make that showing here. As Plaintiff notes, to prevail on his claims against Verizon in the Arbitration, he needs to show that "[a]fter receiving notice … of [his] dispute" from Equifax, Verizon failed to (1) "conduct an investigation with respect to the disputed information[,]" (2) "review all relevant information provided by [Equifax]" and (3) "report the results of the investigation to [Equifax]." 15 U.S.C. § 1681s-2(b); Doc. 1 ¶¶ 44-48. Yet Plaintiff fails to explain why *Verizon* would not be in possession of all the relevant documents and information as to (i) what it received from Equifax concerning Plaintiff's dispute(s), (ii) its investigation into the disputed information, and (iii) the information that it reported to Equifax.

Plaintiff instead claims—without support—that he "argued to the Arbitrator that clear testimony was needed to show that Equifax in fact forwarded three separate disputes to Verizon Wireless, and to explain its policies for how it identifies accounts as reporting in duplicate to furnishers." Doc. 56 at 3.[5] He also alleges that he "need[s] non hearsay credit reports from Equifax that show the duplicate reporting and an explanation for how the triple accounts were reporting to lenders as evidence of damages," and that "the documents themselves need to be

---

[5] Plaintiff further asserts that "the Arbitrator has deemed the requested information relevant, as well as necessary." Doc. 56 at 4. But he provides no support for this representation and in fact has admitted that the Arbitrator did not issue any order in connection with the subpoena. Ex. 1 at 4. In all events, Equifax (as a non-party to the Arbitration) was not heard in connection with any finding made by the Arbitrator, and so the Court should not accord deference to the Arbitrator's supposed finding in this regard.

explained by an industry insider." *Id*. But Plaintiff fails to explain why Verizon, the furnisher who Plaintiff alleges reported duplicate tradelines to Equifax, lacks the relevant documents and information concerning whether "Equifax in fact forwarded [his] three separate disputes" to Verizon. Of course, Verizon would have received these communications from Equifax and would be expected to still have them. He also does not explain why the credit report(s) he relied on in filing his Complaint do not suffice to show any alleged damages or how his Verizon account was reporting. *See* Doc. 1 ¶ 13 ("At present, Plaintiff's credit report has three negative trade lines on his report from Verizon for the same exact account.").[6] Nor does Plaintiff explain how Equifax's own internal policies for identifying duplicate accounts are in any way relevant to his claims against Verizon—any communications from Equifax speak for themselves, and it is Verizon's actions in response to those communications that are at issue in the Arbitration, not Equifax's internal policies. Finally, a corporate representative from Verizon would undoubtedly be the best "industry insider" to explain how a *furnisher* receives, reviews, and responds to a credit dispute forwarded by a CRA—after all, Equifax is not subject to Section 1681s-2(b) of the FCRA governing furnishers, and does not have firsthand knowledge of the policies and procedures that a furnisher like Verizon implements to comply with it.

Moreover, although Plaintiff's Motion's does not address it, the subpoena also requests "[a]ll correspondence between Equifax and Mr. Casas during 2016 and 2019" and "[m]onthly frozen scan credit reports from February 2018 through November 2018 concerning [Mr. Casas]." Doc. 56 at 11. But Verizon should have any communications between Plaintiff and Equifax that

---

[6] Because Equifax does not maintain copies of consumer reports it sends to third parties, it would not be able to provide any reports sent to any third parties that would "show the [alleged] duplicate reporting" or "how the [alleged] triple accounts were reporting to lenders." Doc. 56 at 3; *see also* Ex. 4, Declaration of Margaret Leslie ("Leslie Decl.") ¶ 3 (explaining Equifax's practices in this regard).

were sent to Verizon as part of the reinvestigation process. *See* 15 U.S.C. § 1681i(a)(2) (providing that CRA must provide all pertinent dispute-related information received from consumer to furnisher). Moreover, Plaintiff fails to explain why the communications between him and Equifax are relevant to his claims against Verizon—or why, for that matter, those communications would not be equally in his possession. Nor does he explain what relevance frozen scans—which would show only how his Equifax credit file appeared at a given point in time and not what information (if any) Equifax transmitted to Verizon or any other entity—have to his claims against Verizon. Leslie Decl. ¶¶ 4-5.

In sum, even if an arbitrator had authority to order pre-hearing discovery from a third party (and an arbitrator does not), Plaintiff has not demonstrated that the documents and information sought from Equifax are even relevant to his claims against Verizon, much less that he has any special need for those documents and information. For these independent reasons, the Court should deny Plaintiff's Motion.

**III.     Compliance With The Subpoena Would Be Unduly Burdensome For Equifax.**

Finally, compliance with the subpoena would be unduly burdensome for Equifax, and Plaintiff should be required to at least first seek the necessary documents and information from other available sources, including Verizon. The following factors are considered in determining whether compliance with a subpoena would be unduly burdensome: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch*

*Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).[7]  "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id*.

To comply with the subpoena here, Equifax would need to not only compile all of the requested communications with Verizon and Plaintiff from its files, but also manually generate 10 frozen scans (which are not maintained in the ordinary course of business, *see* Leslie Decl. ¶¶ 3-5) and prepare a corporate representative for deposition on a number of topics.  But Plaintiff does not assert that he has unsuccessfully attempted to obtain these documents and this information from other sources, including either his own records or Verizon's records.  Notably, the Arbitration scheduling order provides for the parties to exchange information, including "information regarding the specific account(s) at issue, [Automated Credit Dispute Verification Forms ("ACDVs")], historical account notes, and relevant policies and procedures," and to "propound[] no more than five (5) requests for production and ten (10) Interrogatories to each other." Ex. 3.  It is unclear from Plaintiff's Motion what information and documents the parties have exchanged and why Plaintiff purportedly needs to obtain still more documents and information from Equifax.  Absent any showing that he has tried but been unable to obtain the

---

[7] In *Wiwa*, the Fifth Circuit was reviewing a grant of a motion to quash under Fed. R. Civ. P. 45, but the court did not limit the applicability of these factors to those specific circumstances, 392 F.3d at 817-18, and other courts have held that subpoenas issued under Section 7 of the FAA are subject to the limitations of Fed. R. Civ. P. 45.  *See*, *e.g.*, *In re Managed Care Litig.*, No. 00-01334-MD, 2020 WL 3643042, at *7 (S.D. Fla. July 6, 2020) ("[T]he Eleventh Circuit expressly found that Rule 45(d) is incorporated in Section 7 of the FAA"); *Maine Cmty. Health Options v. CVS Pharmacy, Inc.*, No. CV 20-10-JJM, 2020 WL 1130057, at *5 (D.R.I. Mar. 9, 2020) ("In sum, in the unique context of an arbitral subpoena … courts still have the Fed. R. Civ. P. 45 duty to assess the subpoena's burden and ensure that the third party is not subject to 'undue burden or expense.'") (quoting Fed. R. Civ. P. 45(d)(1)); *Maine Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 6696042, at *5 (W.D. Wis. Dec. 20, 2018) ("I share Walgreens's view that this court's enforcement duties under Section 7 of the FAA include protecting a person ordered to comply with an arbitration subpoena from undue expense.").

information sought through discovery in the Arbitration, Plaintiff should not be permitted to seek this information directly from a non-party to the Arbitration like Equifax.[8] *See Wiwa*, 392 F.3d 812 (listing "the need of the party for the documents" as one of the factors to be considered when determining whether a subpoena creates undue burden).

Further, Plaintiff states that enforcing the subpoena against Equifax "would also be more efficient for the present stayed case, as once the stay is lifted, Equifax will not have to give a deposition again." Doc. 56 at 5 n.1. Here, Plaintiff baselessly assumes that there will still be claims to litigate following the Arbitration. Yet, his claims against Equifax were stayed precisely because he may not have any remaining claims after the Arbitration. *See* Order, Doc. 50 at 2 (in staying Plaintiff's claims against Equifax, Court recognized that "the arbitrator's decision may undermine the basis for Plaintiff's claim against Equifax"). For example, if the Arbitrator determines that Plaintiff's Verizon account was reported accurately at all relevant times, Plaintiff would have no FCRA claims against Equifax, as his claims against Equifax require a threshold showing of inaccuracy. *See* Doc. 36 at 7 (citing *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 715, 730 (S.D. Tex. 2013).

Accordingly, the Court should deny Plaintiff's Motion to Enforce for the independent reason that compliance with the subpoena would be unduly burdensome for Equifax.

---

[8] Equifax did not "clearly contemplate[]" having to provide documents or testimony in the Arbitration when it filed its Motion to Stay. Doc. 56 at 6. To the contrary, Equifax sought the stay on the grounds that "[t]he best forum for determining the accuracy of Plaintiff's Verizon and Jefferson Capital account information is … the Arbitration involving Plaintiff, Verizon, and Jefferson Capital" and that "[a]s contracting parties to the account, Plaintiff and Verizon are best-positioned to resolve the accuracy of the reporting of Plaintiff's Verizon account." Doc. 36 at 8.

## **CONCLUSION**

For these reasons, Equifax respectfully requests that the Court deny Plaintiff's Motion to Enforce.

Dated: February 19, 2021.                    Respectfully submitted,

**KING & SPALDING LLP**

*/s/ Katherine M. Stein*
Katherine M. Stein
Tex. Bar No. 24083980
S.D. Tex. Bar. No. 3412305
King & Spalding LLP
500 W. 2nd Street
Suite 1800
Austin, TX 78701
Tel. (512) 457-2000
Fax (512) 457-2100
kstein@kslaw.com

*/s/ Zachary A. McEntyre*
Zachary A. McEntyre (*pro hac vice*)
John C. Toro (*pro hac vice*)
Meryl W. Roper (*pro hac vice*)
1180 Peachtree Street NE
Atlanta, GA 30309-3521
Tel. (404) 572-4600
Fax: (404) 572-5100
zmcentyre@kslaw.com
jtoro@kslaw.com
mroper@kslaw.com

*Attorneys for Defendant*
*Equifax Information Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, I electronically filed the foregoing **RESPONSE TO MOTION TO ENFORCE** with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Katherine M. Stein*
Katherine M. Stein
