IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVEN CASAS, individually and on behalf of all other similarly situated consumers, <br><br> Plaintiff, <br><br> vs. <br><br> EQUIFAX INFORMATION SERVICES LLC, VERIZON WIRELESS, JEFFERSON CAPITAL SYSTEMS LLC, <br><br> Defendants. | Case No.: 4:18-cv-4444 <br><br><br> **PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO ENFORCE** |

**COME NOW**, Plaintiff, Steven Casas ("Plaintiff"), by and through undersigned counsel, respectfully submits this reply in further support of his motion to enforce an arbitration subpoena against Defendant Equifax Information Services LLC ("Equifax") in this case pursuant to the Federal Arbitration Act ("FAA"). Ultimately, the question presented by this motion is whether an arbitration proceeding should serve the interests of justice or not. If a consumer bound by an arbitration agreement is prevented from obtaining the critical discovery necessary to win his or her claim, arbitration is a sham. Here, Plaintiff asks that the Court ensure arbitration proceedings uphold justice.

**ARGUMENT**

A. The Court Must Enforce the Subpoena or Lift the Stay to Preserve a Just Arbitration

The Fifth Circuit has not decided the issue of whether an arbitrator has the power to issue a pre-hearing subpoena. As Defendant notes, there is a circuit-split on the issue, with the Eighth and Fourth Circuit finding in favor of arbitration efficiency. *See also* Anne B. O'Hagen, *Balancing Burdens: Clarifying the Discovery Standard in Arbitration Proceedings*, 117 Yale L.J. 1559

1

(2008) (outlining the split in the circuits and the problem caused by 9 U.S.C. § 7). Nor has any case in this district resolved the issue. As such, there is no binding precedent on the issue and two competing theories of interpreting the statute. What is clear, is that the *only* case in this district cited by either party on the issue of arbitration discovery is one that favored efficiency of discovery to the benefit of the arbitration proceedings. *See Ferro Union Corp. v. SS Ionic Coast*, 43 F.R.D. 11 (S.D. Tex. 1967).

Defendant argues that "Plaintiff has not cited a single case where a court granted a motion to enforce an arbitration subpoena seeking pre-hearing *deposition testimony* from a non-party to the arbitration." But this statement is extremely specific. Plaintiff has cited to a decision, from this very district, which allowed for *pre-arbitration* discovery, including depositions, to occur due to extraordinary circumstances. *Ferro Union Corp.*, 43 F.R.D. 11. In *Ferro*, the court reasoned that the "search for the facts is the continuing search in every contested matter before the courts. This Court cannot conceive how defendants can be harmed by allowing the depositions to proceed." *Id*. at 14. Defendant does not cite to another case from this district. It appears that the most persuasive authority available on the issue is *Ferro*, which clearly sided with allowing necessary discovery to occur in furtherance of the arbitration.

While the text of the FAA suggests limited subpoena powers for prehearing discovery in arbitration, courts also acknowledge the underlying policy goal of efficient dispute resolution and that some discovery might be needed since "in a complex case . . . , the much-lauded efficiency of arbitration will be degraded if the parties are unable to review and digest relevant evidence prior to the arbitration hearing." *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870 (8th Cir. 2000); *see also COMSAT Corp. v. NSF*, 190 F.3d 269, 276 (4th Cir. 1999). After all, the Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors*

*Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). This is exactly the type of complex case that requires discovery from multiple parties to prove the claim.

  Additionally, Defendant cannot use the Stay entered by the Court to prevent Plaintiff from acquiring necessary discovery, and then use the arbitration against Plaintiff. This is manifestly unjust. To avoid this, the Court has it within its discretion to temporarily lift the stay and allow for discovery from Equifax. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Here, the prejudice to Plaintiff in not being able to obtain relevant and necessary discovery from Equifax overrides any hardship Equifax can demonstrate in producing evidence and providing testimony. This is the exact argument Plaintiff submitted in its response to Defendant's Motion to Stay. [ECF 48], filed on October 20, 2019. As Plaintiff has feared, the case against Defendant has now lingered for years (Complaint filed on November 21, 2018 [ECF 1]), without any progress by Equifax. It is now time to lift the Stay and allow discovery against Equifax to progress the claim in arbitration, in the event the Court does not find this power under the FAA. The extreme prejudice against Plaintiff cannot stand and heavily outweighs the production of evidence, which Equifax maintains.

  B. <u>The Documents are Relevant and Only in Equifax's Possession</u>

  Defendant argues in its opposition to Plaintiff's motion that all "of the documents and information Plaintiff seeks should either be in the possession of the parties to the Arbitration or are irrelevant to Plaintiff's claims against Verizon. Notably, Plaintiff does *not* claim that he has tried but failed to obtain the documents and information he seeks from Verizon or his own files." [ECF 58], p. 2. This argument is blatantly false. Specifically, Plaintiff argued that testimony was needed from Equifax, and only from Equifax, to explain **<u>its</u>** policies for how it identifies accounts

3

as reporting in duplicate to furnishers.[1] Further, Plaintiff requires complete non-hearsay credit reports from Equifax, and only Equifax, that show the duplicate reporting. Finally, Plaintiff argued that an explanation for how the quadruple accounts were reporting to lenders was required for damages. Because the case involves technical documents, the documents themselves need to be explained by a corporate employee.[2]

This evidence is not available from Plaintiff or Verizon. Neither party has the ability to produce non-hearsay documents from Equifax. Nor has Plaintiff maintained all of the credit reports issued by Equifax that are necessary to his case. Further, neither party has the ability to explain how the accounts appeared to creditors, as creditors only receive credit information from Equifax, not Plaintiff or Verizon. Finally, neither Plaintiff nor Verizon have the ability to explain Equifax's policies and other technical documents. Each of these items sought are not only essential for Plaintiff to prevail at the arbitration hearing, they are also essential for Plaintiff to oppose the anticipated motion for summary judgment. How can Plaintiff respond to Verizon's arguments that they weren't notified, or that no erroneous credit report was issued, on summary judgment, if Plaintiff is precluded from getting these documents and testimony until <u>after</u> summary judgment is adjudicated?

This argument dovetails into Defendant's next argument, that the Court cannot impose this burden on Defendant without Plaintiff trying to obtain the information and documents through discovery first. However, Defendant does not detail exactly how Plaintiff could obtain any of the above-mentioned evidence through arbitration. True, Verizon is in possession of (i) what it

---

[1] A matter contested within the arbitration hearing is whether Verizon was put on notice of the duplicate reporting. By understanding how Equifax conveyed the duplicate problem to Verizon, Plaintiff will be able to address Verizon's arguments in this regard. Otherwise, Verizon will continue to deny it was put on notice of a duplicate issue.
[2] Defendant itself admits that frozen scans are "stored in a binary, non-human readable flat file format." [ECF 58-4], ¶ 4 (*infra*).

received from Equifax concerning the disputes, (ii) its investigation into the disputed information, and (iii) information that Verizon reported to Equifax. But this is not the extent of what Plaintiff requested from Equifax and Equifax fails to recognize this fact. Plaintiff sought relevant documents relating to damages, non-hearsay documents only in the possession of Defendant, and an explanation from Equifax about how it conveys the issue of duplicate reporting to Verizon. These are definitively relevant and the Arbitrator agreed so when the Arbitrator signed the subpoena.[3]

Plaintiff also cannot use the credit disclosures that he has in his possession. Those credit disclosures are from third parties and have redacted account numbers. Because this case focuses on duplicative accounts <u>and their account numbers</u>, non-hearsay credit disclosures with un-redacted account numbers are required. Equifax is the only party that is able to provide these documents. In addition, because the disclosures contain accounts from multiple parties, not just Verizon, disclosures from Equifax are necessary to show all the accounts to prove the duplicative reporting of the accounts. Defendant argues that Plaintiff fails to explain "what relevance frozen scans – which would show only how his Equifax credit file appeared at a given point in time and not what information (if any) Equifax transmitted to Verizon or any other entity – have to his claims against Verizon." [ECF 58], p. 11. This is not correct. The frozen scans show what was transmitted to Plaintiff's creditors by showing exactly what was on his credit report at that time.

For these reasons, Equifax's documents and testimony are vital to prove essential elements of Plaintiff's FCRA claim against the furnisher: inaccuracy and damages. It cannot limit the scope

---

[3] Equifax argues that Plaintiff "provides no support" for the representation that the Arbitrator deemed the information relevant and "admitted that the Arbitrator did not issue any order in connection with the subpoena." [ECF 58], p. 9 n 5. But this omits the fact that the subpoena itself was signed by the Arbitrator after a request from Plaintiff. The subpoena itself is an order from the Arbitrator to produce the documents. This was only achieved after a conference with the Arbitrator on the relevance of the documents. Plaintiff could obtain an affidavit on this point if necessary however the issuance of the subpoena executed by the arbitrator would presumably make this a moot point.

5

of Plaintiff's claim to only focus on documents that Verizon possesses, because it omits a necessary element of an FCRA claim; that the credit file was inaccurate or misleading. *See Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 n. 3 (5th Cir. 2000) (To successfully plead a case under § 1681e(b), a plaintiff must plead that the *credit report* was inaccurate).

### C. The Subpoena is Not Burdensome

Defendant argues that the subpoena is burdensome because it would have to compile all the requested documentation. But this argument fails for one simple reason, Defendant is involved with the litigation and should have preserved and compiled all the relevant documents already. Indeed, it is Defendant's duty to preserve the evidence of an outstanding claim. Defendant's continued attempts to characterize itself as a "non-party" is only true in a technical sense. In reality, Defendant is an inextricable part of the arbitration claim. *See Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 45 (M.D. Tenn. 1994) (non-party was "intricately related to the parties involved in the arbitration and are not mere third-parties who have been pulled into this matter arbitrarily."). Evidence used in arbitration will also be used in court, and vice versa. Overall, it would be more efficient to produce the documents now and save time in discovery later.

Further, Defendant fails to provide sufficient evidence that the requests are burdensome. It is Defendant's burden to "show specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive." *McLeod, Alexander, Powell & Apffell, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party must show how the requested discovery is unduly burdensome "by submitting affidavits or offering evidence revealing the nature of the burden." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tec. 2017); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense

6

involved in responding to discovery request."). Defendant only submits evidence that the request for frozen scans is burdensome.

But Defendant's complaint about having to "manually generate 10 frozen scans" cannot be taken seriously upon a closer examination of the declaration Defendant submitted. [ECF 58-4]. In the declaration, an Equifax employee states that:

> "Frozen scans" are snapshots of Equifax's primary credit reporting database that are typically recorded near the end of each month. Frozen scans are stored in a binary, non-human readable flat file format aggregated for all consumers and have to be sorted and converted in order to be use in litigation by a particular consumer. Frozen scans are also not stored in a database that Equifax can query to search for information. For example, it is not possible to run a query for a Verizon account in the frozen scans as you would by typing a phrase into a search engine like Google."

[58-4], ¶ 4.

While Defendant's attempt to argue that it would be burdensome to produce these scans, what it reveals is that the scans are routinely "recorded near the end of each month." Thus, the records are kept within the normal course of business, contrary to Defendant's assertion. The data would just have to be produced. The declaration also states that "the information Plaintiff wants from the frozen scans is not accessible to Equifax." [58-4], ¶ 6. But this is false. Equifax does not appear to know the information Plaintiff wants. Plaintiff wants the entire frozen scan, not isolated information in each one. Plaintiff does not need queries for just Verizon accounts. Plaintiff needs the full credit file that shows multiple, duplicate accounts. Equifax is a giant, multinational corporation with hundreds of employees who routinely review credit files.[4] There can be no rational argument that it unduly burdens Equifax to transpose ten scans that it already maintains in the normal course of business and should have preserved at the start of the case. Other than that, Defendant does not present any evidence that any other request is unduly burdensome.

---

[4] As argued above, Equifax is the only party with access to credit files and the ability to produce frozen scans. For this reason, Plaintiff cannot obtain these documents from Verizon or any other party.

7

Defendant also argues that Plaintiff "baselessly assumes that there will still be claims to litigate following the Arbitration." [ECF 58], p. 13. But this is not a baseless assumption. A unanimous Supreme Court has ruled that the arbitration proceedings are not entitled to "full faith and credit." *McDonald v. West Branch*, 466 U.S. 284, 287-88, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984). Even if the arbitrator made a decision that directly affected an issue in the claims against Equifax, the Court is not obligated to accept the arbitrator's decision. The Supreme Court has found that it is "not at all clear that arbitration awards could be given a *res judicata* or collateral estoppel effect in a related judicial proceeding." *Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131, 134-35 (7th Cir. 1988) (*citing Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 222 (1985); *see also McDonald v. West Branch*, 466 U.S. 284 (1984). While collateral estoppel may apply, it is still necessary for the Court to examine whether the same issues were decided. "If the basis of an [arbitrator's] decision is unclear, and it is thus uncertain whether an issue was actually and necessarily decided [the arbitration proceeding], then relitigation of the issue is not precluded under the doctrine of collateral estoppel." *Hogue v. Hopper*, 728 A.2d 611, 615 (D.C. 1999) (*quoting Connors v. Tanoma Mining Co.*, 953 F.2d 682, 684 (D.C. Cir. 1992)). As such, the assumption that the case will continue in federal court is not baseless. In any event, Equifax's argument in this regard patently demonstrates bad faith. Equifax's position demonstrates that Equifax can withhold necessary documents and testimony from the arbitration proceeding so that Plaintiff cannot prevail there, only to have Equifax than argue to the Court that because Plaintiff could not prevail in arbitration (due to its withholding), the court litigation must also be dismissed. This is a complete perversion of justice and demonstrates why the Court must step in here.

Moreover, even assuming the Arbitrator's decision is used, it is not particularly baseless to assume that the Arbitrator will naturally find that the duplicate reportings are inaccurate. It is

8

obviously inaccurate to report the same account **four** different times. As such, it is folly to think that this will not come before the Court and that Defendant has not already saved and compiled all the relevant documents already.

Accordingly, Defendant's weak complaint of any undue burden should fall on deaf ears. There is no possibility that Defendant suffers such an undue burden that it precludes Defendant from producing an iota of evidence in the last three years. The evidence, relevant to claims against both Verizon and Equifax under the FCRA is required by Plaintiff to prove his claim. The Arbitrator himself has signed the subpoena and deemed the information relevant. Thus, an order to compel the necessary discovery and assist the arbitration proceedings is vital. Alternatively, the Court can lift the stay of the case and allow for discovery. Otherwise, arbitration loses its effectiveness, Equifax will have successfully avoided liability, and justice has been denied.

## CONCLUSION

For these reasons, Plaintiff respectfully requests the Court enforce the subpoena against Defendant Equifax.

Dated:  March 19, 2021.

                                        Respectfully Submitted,

                                        */s/ Daniel Zemel*
                                        Daniel Zemel, Esq.
                                        ZEMEL LAW LLC
                                        660 Broadway
                                        Paterson, New Jersey 07514
                                        T: 862-227-3106
                                        DZ@zemellawllc.com
                                        Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of March, 2021 a true and correct copy of the foregoing document was sent to all counsel of record via the Court's ECF system.

/s/ Daniel Zemel
Daniel Zemel, Esq.